[Civ. No. 64637. Second Dist., Div. Two. Jan. 20, 1983.]

TURCON CONSTRUCTION, INC., Cross-complainant and Appellant, v. NORTON-VILLIERS, LTD. et al., Cross-defendants and Respondents.

COUNSEL

Franklin J. Richardson for Cross-complainant and Appellant.

Murchison & Cumming, James S. Link and Bonnie S. Bass for Cross-defendants and Respondents.

OPINION

**COMPTON, Acting P. J.**—This is an appeal from a judgment dismissing a cross-complaint for indemnity. The primary issue presented is whether an action for implied indemnity or contribution may be pursued by one alleged tortfeasor against another after the second has settled with the plaintiff.

The facts, insofar as they are pertinent to this issue, are summarized below.

Plaintiff below, Robert Christie, was operating a 1969 Norton 750 cc motorcycle when he collided with a car which had been proceeding in the opposite direction and turned left in front of him. The car was driven by Russell Turner

and was owned by Turcon Construction, Inc. (hereinafter referred to as appellant). As a result of the collision, plaintiff suffered severe injuries, including burns caused by a fire after the motorcycle's gas tank ruptured.

Plaintiff filed an action for personal injuries naming Turner and appellant as defendants. In addition, Norton-Villiers, Ltd. and Berliner Motor Corporation (hereinafter referred to as respondents) were joined as defendants who were alleged to be liable for the defective manufacture and design of the motrocycle and its gas tank. Appellant cross-complained for indemnity and/or contribution from respondents.

Plaintiff settled with appellant and Turner for $100,000. Later, plaintiff settled with respondents for a sum just short of $1 million. Respondents moved to dismiss the cross-complaint on the basis that their good faith settlement with plaintiff prohibited appellant from obtaining indemnity or contribution. The court below granted the motion and this appeal followed.

Code of Civil Procedure section 877.6, subdivision (c) provides: "A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative *contribution,* or partial *or* comparative *indemnity,* based on comparative negligence or comparative fault." (Italics added.)

█ Appellant first contends that it and respondents were not "joint tortfeasors" within the meaning of section 877.6, subdivision (c). Appellant argues that that term should be construed to apply only to those who act in concert in causing an injury. Appellant admits that the two parties were concurrent or successive tortfeasors. Appellant thus contends that section 877.6, subdivision (c) does not bar cross-complaints by concurrent or successive tortfeasors.

We do not read Code of Civil Procedure section 877.6, subdivision (c) in so narrow a fashion. As Dean Prosser has noted, "The terms 'joint tort' and 'joint tortfeasors' have been surrounded by no little uncertainty and confusion. There have been various attempts to define them, and to propose tests of one kind or another as to when this may be found to exist. An examination of the multitude of cases in which they are to be found leads to the conclusion that they have meant very different things to different courts, and often to the same court, and that much of the existing confusion is due to a failure to distinguish the different senses in which the terms are used, which often has had an unfortunate effect upon the substance of the law." (Prosser, Law of Torts, (4th ed. 1971), ch. 8, Joint Tortfeasors, § 46, p. 291.)

Although appellant's construction of the term "joint tortfeasor" is the historical definition of the term, careless usage has expanded its meaning considerably. Today it is commonly used interchangeably with the term "concur-

rent tortfeasor" to denote defendants whose negligence has concurred to produce injury. (Prosser, *supra,* § 47, p. 298.) Accepted principles of statutory construction dictate that we presume the Legislature acted in light of decisions which directly bear upon the language at issue. (*Lowman* v. *County of Los Angeles* (1982) 127 Cal.App.3d 613 [179 Cal.Rptr. 709].) We presume the Legislature was aware of the modern use of the term "joint tortfeasors" as embracing joint, concurrent and successive tortfeasors when section 877.6, subdivision (c) was drafted. Moreover, we can discern no legislative policy (nor does appellant suggest one) which would be served by the distinction urged by appellant.

The clear policy of section 877.6, subdivision (c) is to encourage settlement by providing finality to litigation for the settling tortfeasor. (Cf. *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 603 [146 Cal.Rptr. 182, 578 P.2d 899], discussing a similar provision in Code Civ. Proc., § 877.)[1] This policy applies with equal force to all tortfeasors joined in a single action regardless of whether their acts were successive or contemporaneous.

Despite appellant's unclear arguments, it does not appear to seriously contend the settlement lacked good faith. The settlement was reached before a judge after several days of discussions. There is no evidence in the record that the settlement was collusive or intended to injure appellant's interest.

Code of Civil Procedure section 877.6 is a codification of the principle set forth in *American Motorcycle Assn.* v. *Superior Court, supra,* at page 604 where the court stated: "[W]e conclude that from a realistic perspective the legislative policy underlying the provision [§ 877] dictates that a tortfeasor who has entered into a 'good faith' settlement [citation] with the plaintiff must also be discharged from any claim for partial or comparative indemnity that may be pressed by a concurrent tortfeasor."

In attempting to avoid the impact of the *American Motorcycle Assn.* v. *Superior Court* rule, Code of Civil Procedure sections 877 and 877.6, appellant makes a convoluted and self-defeating argument. That argument goes that there were in effect two separate and distinct torts, i.e., the negligence of its agent Turner which produced broken bones, etc., and the negligence of respondents which produced burns and other residual injury. The argument assumes that sequentially the respondents' negligence came second. Thus it is urged that appellant's role was passive/secondary vis-à-vis respondents. Hence appellant is entitled to indemnity from respondents for any damage attributable to the fire.

---

[1]Code of Civil Procedure section 877 provides in part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort.. . . . (b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors."

Of course, if there were in fact two separate and distinct torts committed, one by the appellant and one by the respondents, appellant would never, under any theory, be entitled to indemnity for damages attributable to its tortious conduct. The fact, however, is that negligence of both appellant and respondents concurred to produce the sum total of the injuries to the plaintiff. The negligence of appellant's agent was an active proximate cause of those injuries. Appellant was thus jointly and severally liable for the injuries. The divisibility or indivisibility of injuries does not rest on the nature of the injuries but on the element of causation.

Appellant's cross-complaint does not rest on any contractual indemnity nor does it allege that its liability vis-à-vis respondents is one imposed as a matter of law because of its relationship with respondent. (*Kramer* v. *Cedu Foundation, Inc.* (1979) 93 Cal.App.3d 1 [155 Cal.Rptr. 552].) In summary that complaint contains no allegations which could provide the basis for a shifting of total liability to respondent.

Although appellant's cross-complaint for indemnity is cast in the traditional terms of active versus passive negligence, it can only be read as seeking indemnity on the basis of partial or comparative fault.

The concepts of primary versus secondary negligence and passive versus active negligence, which formerly provided a basis for equitable indemnity, have been subsumed by adoption of the pure comparative fault doctrine in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], and the holding in *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, that the comparative fault doctrine embraced equitable indemnity. (Also see *City of Sacramento* v. *Gemsch Investment Co.* (1981) 115 Cal.App.3d 869 [171 Cal.Rptr. 764].)

The relief sought by the cross-complaint was clearly barred by the provisions of Code of Civil Procedure sections 877 and 877.6.

The judgment is affirmed.

Beach, J., and Gates, J., concurred.