[No. AO20325. First Dist., Div. Three. Apr. 26, 1983.]

MALCOLM KOHN et al., Petitioners, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
BAXTER HORN et al., Real Parties in Interest.

[No. AO21234. First. Dist., Div. Three. Apr. 26, 1983.]

MALCOLM KOHN et al., Petitioners, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
FARRELL CONSTRUCTION COMPANY, Real Party in Interest.

324

## COUNSEL

Robert F. Lee and David L. Kelvin for Petitioners.

No appearance for Respondent.

Williams, Kelly, Polverari & Skelton, Brian S. Kreger, Laurie F. Faulkner, Randall C. Creech, Glaspy, Elliott, Creech, McMahon & Reed, Glaspy, Elliott, Creech, McMahon, Roth & Reed for Real Parties in Interest.

## OPINION

**WHITE, P. J.**—These two petitions, filed by three defendants in the same action, challenge the trial court's dismissal of a cross-complaint petitioners had filed against two codefendants. The codefendants had each settled with the plaintiffs for $6,000, and the trial court's dismissal of the cross-complaint was based upon a determination that the settlements were reached in good faith. Petitioners challenge the determination of good faith and argue that because commercial contracts were involved, the rules for settling joint tortfeasors do not apply. We have concluded that because the only indemnity sought by the cross-complaint was equitable indemnity among joint tortfeasors, the trial court did not err in dismissing the cross-complaint.

Petitioners are a real estate brokerage (Associated Realty, Inc.), its managing broker (Malcolm Kohn), and its salesman (Daniel J. Rosenbledt). In early 1977, Mr. Kohn was the trustee of a trust which owned a residence in South San Francisco. According to the complaint in the underlying action, the house was damaged by fire in February of 1977. In March of 1977, defendant Farrell Construction Company, one of the real parties here, repaired the damage.

By July of 1977, Mr. Kohn entered a contract to sell the property to plaintiffs Arun Singh Cauhan and Minienne Roshni Cauhan for $60,500. While the transaction was in escrow, Associated Realty ordered a structural pest control inspection by defendants Baxter Horn and Horn Pest Control (treated as one defendant and referred to hereafter as Horn), the other real parties in this proceeding.

The sale was completed, but when moisture problems appeared, plaintiffs learned for the first time of the fire damage and repairs. They filed an action against petitioners and real parties in interest. The sixth amended complaint, filed January 25, 1982, sought $500,000 in general damages from the defendants and in addition sought attorney's fees and punitive damages of $750,000 from petitioners. The complaint alleged that petitioners misrepresented the condition of the property and breached their fiduciary duty to disclose the fire damage to plaintiffs. Causes of action against Farrell Construction Company and Horn alleged negligent repair and inspection. The complaint also alleged a conspiracy among all the defendants to conceal the fire damage from plaintiffs in order to defraud them. Petitioners cross-complained against real parties for total or partial indemnification for any damages assessed against petitioners.

On October 1, 1982, shortly before the matter was scheduled for trial, plaintiffs entered a joint settlement agreement with Farrell Construction Company and Horn that each would pay $6,000 for a total sum of $12,000 in exchange for dismissal of plaintiffs' action against them. Real parties then noticed motions for confirmation of the settlement and to dismiss the cross-complaint against them. After two separate hearings before different judges, the motions were granted. These two petitions followed. We consider them in the same opinion because they raise identical issues.

Code of Civil Procedure section 877 provides in part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given *in good faith* before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort—

"· · · · · · · · · · · · · · · · · · · · · ·

"(b) It shall discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasors." (Italics added.)

Code of Civil Procedure section 877.6 provides that the issue of "good faith" may be litigated at a hearing on a pretrial motion brought by any party to the action and that the burden of proof rests upon the party asserting that good faith is lacking. "A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (Code Civ. Proc., § 877.6, subd. (c).)

The most recent authority interpreting Code of Civil Procedure section 877.6 has observed that it "is a codification of the principle set forth in *American Motorcycle Assn.* v. *Superior Court* [(1978) 20 Cal.3d 578] at page 604 where

the court stated: '[W]e conclude that from a realistic perspective the legislative policy underlying the provision [§ 877] dictates that a tortfeasor who has entered into a "good faith" settlement [citation] with the plaintiff must also be discharged from any claim for partial or comparative indemnity that may be pressed by a concurrent tortfeasor.'" (*Turcon Construction, Inc.* v. *Norton-Villiers, Ltd.* (1983) 139 Cal.App.3d 280, 283 [188 Cal.Rptr. 580].)

*Was the Settlement in "Good Faith"?*

Petitioners argue that because of the gross disparity between the damages sought in the complaint and the settlement amounts, the trial court erred in approving the settlement. They assume that the court relied upon *Cardio Systems, Inc.* v. *Superior Court* (1981) 122 Cal.App.3d 880 [176 Cal.Rptr. 254], which they contend is wrongly decided. They ask this court to reaffirm the rule that "the amount of a settlement determines whether or not it is in good faith."

Case law is stacked heavily against petitioners. Although the seminal authority for evaluating "good faith" in a settlement recited that "[t]he price of a settlement is the prime badge of its good or bad faith" (*River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986, 996 [103 Cal.Rptr. 498]), in the wake of that decision California appellate courts have routinely made or upheld findings of "good faith," even where the settlement bore no reasonable relationship to the amount of the prayer. *Fisher* v. *Superior Court* (1980) 103 Cal.App.3d 434 [163 Cal.Rptr. 47], observed that "[i]n the 22 years since the effective date of the contribution statutes (i.e., Code Civ. Proc., §§ 875-880), there is no reported California case that has actually held that a settling plaintiff or tortfeasor has not acted in good faith to the nonsettling alleged joint tortfeasors in making settlement." (At p. 444.) Review of the most recent decisions in the area (see, e.g., *Golden Bear Forest Products, Inc.* v. *Misale* (1982) 138 Cal.App.3d 573 [188 Cal.Rptr. 48]; *Burlington Northern R.R. Co.* v. *Superior Court* (1982) 137 Cal.App.3d 942 [187 Cal.Rptr. 376]; *Cardio Systems, Inc.* v. *Superior Court, supra,* 122 Cal.App.3d 880; *Dompeling* v. *Superior Court* (1981) 117 Cal.App.3d 798 [173 Cal.Rptr. 38]) reveals that no one factor is decisive on the issue of good faith and that only rarely will a settlement be disapproved.[1]

In the proceedings below, counsel for Horn submitted a declaration explaining that Horn paid the $6,000 only to avoid the cost of trial and that it was Horn's position that there was no evidence of any negligence on its part or any conspiracy to defraud the plaintiffs. Counsel for Farrell Construction Company

---

[1]Petitioners interpret the decision in *Commercial U. Ins. Co.* v. *Ford Motor Co.* (9th Cir. 1981) 640 F.2d 210, as favorable to their position. However, there the court merely recited California law and concluded that the district court had not determined whether dismissal of a defendant had actually been the result of a settlement and whether the settlement had been made in good faith.

submitted a similar, though less detailed, declaration. Petitioners, who had the burden of proving the settlement was not in good faith, relied upon (1) a declaration by counsel stating his opinion that trial would result in a judgment against real parties at least equal to that against petitioners and (2) a declaration by Malcolm Kohn that at the time of sale he thought all the damage had been repaired and that neither Horn nor Farrell informed him otherwise. No evidence was presented concerning plaintiffs' reasons for settling.

We conclude that given the meager showing made by petitioners, the trial court was within its discretion in finding the settlement to be in good faith. Horn and Farrell Construction Company each paid $6,000 for release from a lawsuit arising out of physical damage to a $60,500 residence. Although the sums paid may be grossly disproportionate to the sums prayed for in the complaint, they are not out of proportion to what the trial court might have considered the probable recovery of plaintiffs should they prove their case.[2] Only under unusual circumstances not revealed to the court below or this court could the plaintiffs recover for emotional distress or other claimed consequences of the physical deficiencies in the residence. The trial court was not required to ignore its own experience in valuing lawsuits and accept the prayer by plaintiffs as the comparison point for evaluating the settlement. (See *River Garden Farms, Inc.* v. *Superior Court, supra,* 26 Cal.App.3d 986.)

*Were the Defendants "Joint" Tortfeasors?*

Petitioners next contend that Code of Civil Procedure section 877 does not apply because they and the settling defendants are not "claimed to be liable for the same tort," as required by the statute. They assert that under the complaint they are being sued for fraud committed on July 27, 1977, while the codefendants' failure to repair or inspect properly took place on earlier dates.

Petitioners rely heavily upon the decision in *Carr* v. *Cove* (1973) 33 Cal.App.3d 851 [109 Cal.Rptr. 449], where the court held that the drivers in two separate auto accidents occurring a month apart were not joint tortfeasors for purposes of Code of Civil Procedure section 877. The court drew a distinction between separate torts and overlapping liability for the same injury, finding that the two auto accidents were separate torts.

That distinction has been applied in *Sanchez* v. *Bay General Hospital* (1981) 116 Cal.App.3d 776 [172 Cal.Rptr. 342], a wrongful death action for medical malpractice in treating an accident victim. The plaintiffs settled with the owners and operators of the other automobile, but complained when the trial court off-

---

[2]Petitioners concede that they are the only parties against whom plaintiffs could recover punitive damages or attorney's fees. It would seem to follow that unless there is contractual indemnity (see below), real parties were not at risk for those additional claims.

set that amount from the judgment received against the hospital. The *Sanchez* court concluded that the codefendants were liable for the same tort, "to wit, the death of Mrs. Sanchez" and characterized *Carr* v. *Cove* as a situation where there were two successive independent torts. (*Sanchez, supra,* at p. 796.)

Here, there was but one injury, purchase of a house which was worth less than plaintiffs believed. (See *Turcon Construction Co.* v. *Norton-Villiers, Ltd., supra,* 139 Cal.App.3d 280, 284.) The alleged tortious activities by the contractor, pest control inspector and seller were not independent, but combined to create one indivisible injury which took place when the sale was consummated.

Petitioners' remaining arguments are two contentions not developed in the proceedings below: (1) that not all forms of indemnity are barred by a settlement by some of the joint tortfeasors, and (2) that comparative indemnity under the holding in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], does not extend to lawsuits based upon commercial transactions.

*Does a Good Faith Settlement Bar All Forms of Indemnity Between Joint Tortfeasors?*

In *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97], the court defined indemnity as "the obligation resting on one party to make good a loss or damage another party has incurred. [Citation.] This obligation may be expressly provided for by contract [citation], it may be implied from a contract not specifically mentioning indemnity [citation], or it may arise from the equities of particular circumstances [citations]." Code of Civil Procedure section 877.6 and *American Motorcycle Assn., supra,* 20 Cal.3d 578, make a good faith settlement between joint tortfeasors a bar against any further claim "for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault" (Code Civ. Proc., § 877.6, subd. (c)), but do they bar other forms of indemnity?

In their trial court brief, to show that they were not joint tortfeasors with real parties, petitioners asserted that real parties' liability in the lawsuit would depend upon breach of contract and noted that petitioners had entered agreements for repair and inspection by real parties. However, only in their briefs in support of the petitions to this court did they first argue that they are not seeking partial equitable indemnity under *American Motorcycle Assn., supra,* but some other form of indemnity. In one brief they identified the other form as the "older type" indemnity based upon the distinction between active and passive negligence. In their most recent brief, they contend that the indemnity they seek is total indemnity based upon an implied contractual condition that real parties would perform in a workmanlike manner.

*City of Sacramento* v. *Gemsch Investment Co.* (1981) 115 Cal.App.3d 869 [171 Cal.Rptr. 764], has considered *American Motorcycle Assn.*'s effect upon the varied forms of indemnity. Plaintiff there sued the city and landowners and occupiers for injuries sustained when she slipped on a sidewalk. All defendants except the city settled and were dismissed from the case. The city argued in the appellate court that the settlements did not bar the city from recovering under the theory of "total indemnity," based upon a statute, a contract, or the passive/active theory of equitable indemnity. The *City of Sacramento* court did not rule on the continued availability of contractual or statutory indemnity, finding no contractual or statutory right in the appellant. It did conclude, though, that the decision in *American Motorcycle Assn.* had absorbed the older type equitable indemnity into the new comparative indemnity, leaving no equitable indemnity from a codefendant who has settled in good faith.

We need not address the question left open by the *City of Sacramento* court (nor petitioner's argument that Code Civ. Proc., § 877.6 impairs obligations of contracts) because petitioners did not properly present the contractual indemnity question to the trial court. Plaintiffs sued all defendants on tort theories. Petitioners' cross-complaint did not assert the existence of express or implied contractual indemnity rights. In opposition to the motion to dismiss, they failed to argue for or present evidence of contractual indemnity rights. Based on the pleadings and arguments presented below, the trial court, having found good faith in the settlement, had no basis for permitting the continued prosecution of the cross-complaint for indemnity.[3]

*Does the Holding in American Motorcycle Assn. Extend to Lawsuits Based Upon Commercial Transactions?*

Petitioners' final argument, presented for the first time on the day of oral argument, is that Code of Civil Procedure section 877.6 and *American Motorcycle Assn.* apply only to personal injury actions and are out of place in the setting of a commercial transaction. They cite *Carroll* v. *Gava* (1979) 98 Cal. App.3d 892 [159 Cal.Rptr. 778], and *Godfrey* v. *Steinpress* (1982) 128 Cal.App.3d 154 [180 Cal.Rptr. 95], to support their argument. Neither is apposite.

In *Carroll*, the defendant appealed from a judgment based upon defendant's misrepresentation that property he sold was zoned for a mobilehome park. On appeal, he argued that the doctrine of comparative negligence should have applied to defeat the award because plaintiffs were negligent in relying on the

---

[3]We note that petitioner does not assert express contractual indemnity rights. In *Kramer* v. *Cedu Foundation, Inc.* (1979) 93 Cal.App.3d 1, 12 [155 Cal.Rptr. 552], the court ruled that implied contractual indemnity had been replaced by *American Motorcycle Assn.* principles of implied equitable comparative indemnity.

misrepresentation. The *Carroll* court concluded that in a fraud action the entire risk of falsity was upon the person making the representation, but also made sweeping statements about application of *American Motorcycle Assn.*: "The Gavas cite *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 598 . . ., and *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 . . ., as indications of a policy trend toward comparative fault analysis in disputes other than simple negligence cases. They ask reversal on that basis. Whatever that trend may be (cf. *Transit Casualty Co.* v. *Spink Corp.* (1979) 94 Cal. App.3d 124 . . .), the concept has no place in the context of ordinary business transactions. The modern law of misrepresentation evolved from the 'action on the case of deceit' in business transactions. (See 1 Harper & James, Law of Torts (1956) § 7.1, p. 527; *Hale* v. *George A. Hormel & Co.* (1975) 48 Cal.App.3d 73, 82-86 . . . .) Business ethics justify reliance upon the accuracy of information imparted in buying and selling, and the risk of falsity is on the one who makes a representation. (1 Harper & James, *supra,* at p. 551.) This straightforward approach provides an essential predictability to parties in the multitude of everyday exchanges; application of comparative fault principles, designed to mitigate the often catastrophic consequences of personal injury, would only create unnecessary confusion and complexity in such transactions." (98 Cal.App.3d at pp. 896-897.)

At most, *Carroll* stands for the proposition that as long as the plaintiff is not aware of the true state of facts his negligence in not ascertaining them will not be compared with the negligence of the defendant in making the misrepresentation. Its holding does not imply that relative fault will not be assessed between or among defendants jointly charged with misrepresenting to the plaintiff. Only its dicta could be interpreted so broadly.

*Godfrey* v. *Steinpress, supra,* 128 Cal.App.3d 154, merely reiterated the *Carroll* holding and adopted some of its sweeping generalizations: "We find *Carroll* v. *Gava* (1979) 98 Cal.App.3d 892 . . . persuasive on limiting contributory negligence to simple negligence cases. There, the court held that comparative fault had no application where there has been a misrepresentation as to the applicable zoning in a land sale transaction. '[A]pplication of comparative fault principles, designed to mitigate the often catastrophic consequences of personal injury, would only create unnecessary confusion and complexity in such transactions.' (*Id.,* at p. 897.)

"We do not see how contributory negligence could have any application to fraud by concealment. The concealment alleged by the amendment and proved by the evidence was a deliberate, calculated act by Steinpress. There was no negligence involved. The court did give BAJI Nos. 12.30 and 12.35 concerning fraud and deceit and concealment. The jury was instructed that one of the elements of fraud by concealment is that the plaintiffs must have been unaware

of the concealed fact. The corollary is that if the jury had found that the God-freys were aware of the presence of the termites they would not be entitled to recovery. Thus, just as in a case of comparative fault, the jury was asked to evaluate the plaintiffs' conduct." (128 Cal.App.3d 154, 176.)

The *Godfrey* court did not suggest a sound reason for ruling out comparative indemnity among joint tortfeasors in a commercial misrepresentation action.

■ Code of Civil Procedure section 877.6 provides that a good faith settle-ment shall bar any other joint tortfeasor from any claim against the settling tort-feasor for equitable comparative contribution or partial or comparative indem-nity "based on comparative negligence or comparative fault." Nothing in the section limits its application to personal injury actions or to noncommercial lawsuits. If a commercial action requires determination of the "negligence" or "fault" of various defendants, the principles of Code of Civil Procedure section 877.6 apply to settlements made by the defendants.

The two alternative writs of mandate are discharged and the petitions for peremptory writs of mandate are denied.

Feinberg, J., and Barry-Deal, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied June 23, 1983.