[No. G000178. Fourth Dist., Div. Three. Apr. 29, 1985.]

ANGELUS ASSOCIATES CORPORATION,
Cross-complainant and Appellant, v.
NEONEX LEISURE PRODUCTS, INC.,
Cross-defendant and Respondent.

COUNSEL

Haight, Dickson, Brown & Bonesteel, Dennis K. Wheeler, Roy G. Weatherup and Robert L. Kaufman for Cross-complainant and Appellant.

Kinkle, Rodiger & Spriggs, A. J. Pyka and Gayle K. Tonon for Cross-defendant and Respondent.

OPINION

CROSBY, J.—■ May a nonsettling defendant retailer in a products liability action pursue a cross-complaint for *total* equitable indemnity against the defendant manufacturer despite the latter's good faith settlement with the plaintiff (Code Civ. Proc., § 877.6)? *Yes.*

I

Larry Wilkerson and Anthony Hewitson were injured in a motor home explosion in 1977, allegedly caused by a propane gas leak in a defective heating unit. They sued numerous defendants, including the manufacturer of the vehicle, Neonex Leisure Products, Inc.; the manufacturer of the heating unit, Essex Group, Inc.; the supplier of the heating unit, Suburban Manufacturing Company; and the retailer, Angelus Associates Corporation dba Empire Camper Sales. Against Neonex and Empire, plaintiffs sought recovery on both negligence and strict products liability theories. As is typical in civil actions of this kind, all defendants cross-complained against each of the others for implied indemnity and contribution.

Six months before trial, Neonex, the motor home manufacturer, settled with both plaintiffs. The court determined the settlement was in good faith and granted summary judgment for Neonex on all the cross-complaints against it (Code Civ. Proc., § 877.6).[1]

After the settlement was approved, Empire tendered its defense to Neonex. The tender was rejected; and the underlying personal injury action proceeded to trial against Empire and Essex, the manufacturer of the allegedly defective heating unit.[2] Judgment was for defendants on a special verdict, although plaintiffs' appeal is pending.

---

[1] Code of Civil Procedure section 877.6 provides in part, "(b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing. [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."

[2] The other defendants had also settled with plaintiffs and been dismissed before trial.

In this appeal, Empire attacks the judgment in favor of Neonex on its cross-complaint for total equitable indemnity, claiming this form of indemnity lives after *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] and is not barred by a Code of Civil Procedure section 877.6, subdivision (c) good faith settlement.[3]

## II

■ Under the doctrine of strict products liability, all persons and entities in the manufacturing and marketing chain are liable to the plaintiff even if they are not responsible for the defect proximately causing the loss. (*Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256, 261 [37 Cal.Rptr. 896, 391 P.2d 168].) Between themselves, however, persons not at fault for the defect are entitled to indemnity from those who are, based on equitable principles. (*Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, 3, fn. 1 [148 Cal.Rptr. 419, 582 P.2d 1010].)[4]

Before 1978, implied indemnity was based on common law equitable principles; and if the right to implied indemnity existed at all, the indemnitee was entitled to *total* indemnity. However, if any degree of fault was attributed to the proposed indemnitee, e.g., a retailer who negligently failed to discover the injury-causing defect, indemnity was denied completely. (*Pearson Ford Co.* v. *Ford Motor Co.* (1969) 273 Cal.App.2d 269, 276 [78 Cal.Rptr. 279].) ■ The principle of implied indemnity was explained as follows: "[It] permits one of two tortfeasors to shift the entire loss to the other when, without active fault on the claimant's part, he has been compelled by reason of some legal obligation to pay damages occasioned by the immediate fault of the other. . . . The standard most frequently applied by the California appellate courts is one drawn from an opinion of the Pennsylvania Supreme Court in *Builders Supply Co.* v. *McCabe* [1951] 366 Pa. 322, 325-326 [77 A.2d 368, 24 A.L.R.2d 319]: 'The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party . . . . But the important point to be noted . . . is that secondary as distin-

---

[3]Empire concedes the Neonex settlement was in good faith.

[4]Empire urges its right to indemnity as a retailer is based on implied contractual indemnity. Not so. Where there is no indemnity contract between the manufacturer and retailer, the retailer's right to indemnity is "based upon the equitable concept of implied *noncontractual* indemnity. [Citation.]" (Italics added.) (*Ibid.*)

Thus, this case does not present a question of express contractual indemnity (see *C. L. Peck Contractors* v. *Superior Court* (1984) 159 Cal.App.3d 828 [205 Cal.Rptr. 754]) or implied contractual indemnity (*Bear Creek Planning Com.* v. *Title Ins. & Trust Co.* (1985) 164 Cal.App.3d 1227 [211 Cal.Rptr. 172]; *County of Los Angeles* v. *Superior Court* (1984) 155 Cal.App.3d 798 [202 Cal.Rptr. 444]).

guished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.' [Fn. omitted.]" (*Ford Motor Co. v. Robert J. Poeschl, Inc.* (1971) 21 Cal.App.3d 694, 696-697 [98 Cal.Rptr. 702].)

In 1978 the Supreme Court modified "the California common law equitable indemnity doctrine . . . to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis." (*American Motorcycle Assn. v. Superior Court, supra,* 20 Cal.3d 578, 591.) This change in the law was a response to California's adoption in 1975 of the system of comparative fault where "liability for damage [would] be borne by those whose negligence caused it in direct proportion to their respective fault." (*Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 813 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], fn. omitted.)

But *American Motorcycle* did more than herald the arrival of comparative partial indemnity. The Supreme Court also suggested the goal of apportioning fiscal responsibility according to a tortfeasor's degree of fault should yield to the competing policy of encouraging pretrial settlements: "Thus, while we recognize that section 877, by its terms, releases a settling tortfeasor only from liability for contribution and not partial indemnity, we conclude that from a realistic perspective the legislative policy underlying the provision dictates that a tortfeasor who has entered into a 'good faith' settlement (see *River Garden Farms, Inc. v. Superior Court* [1972] 26 Cal.App.3d 986 [103 Cal.Rptr. 498]) with the plaintiff must also be discharged from any claim for partial or comparative indemnity that may be pressed by a concurrent tortfeasor." (*American Motorcycle Assn. v. Superior Court, supra,* 20 Cal.3d at p. 604.) The Legislature codified the rule in 1981 (Code Civ. Proc., § 877.6).

In permitting a settling tortfeasor to pay less than his proportionate share of the plaintiff's damages under comparative fault principles, section 877.6 provides a powerful incentive to settle before trial. But subdivision (c) expressly applies only to cross-complaints against a good faith settling tortfeasor for "equitable comparative contribution, or partial or comparative indemnity, *based on comparative negligence or comparative fault.*" (Italics added.) As noted above, before *American Motorcycle Assn. v. Superior Court, supra,* 20 Cal.3d 578, implied indemnity was an all or nothing proposition based on common law equitable principles. ▇▇ Does common law, or total, equitable indemnity exist today? And if so, does a cross-

complaint seeking this form of indemnity, as opposed to comparative equitable indemnity, survive a tortfeasor's good faith settlement? In our view, the answer to both questions is yes.

## III

The Supreme Court has yet to consider the issues presented in this appeal. However, the court hinted in *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322 [146 Cal.Rptr. 550, 579 P.2d 441] that *American Motorcycle* may not have abolished common law equitable indemnity. The issue there was whether the comparative fault doctrine applied to apportion liability between one defendant sued on a negligence theory and another for strict products liability. The court cautioned in a footnote: "In the instant case the jury found that Safeway was itself negligent in failing to safely maintain its carts, and thus Safeway's liability is in no sense solely derivative or vicarious. Accordingly, we have no occasion to determine in this case whether the comparative indemnity doctrine should be applied in a situation in which a party's liability is entirely derivative or vicarious in nature. [Citations.]" (*Id.*, at p. 332, fn. 5.)

A division of the Second District considered the question in a recent opinion, however, and unanimously concluded total equitable indemnity survives *American Motorcycle*. In *Huizar* v. *Abex Corp.* (1984) 156 Cal.App.3d 534 [203 Cal.Rptr. 47], plaintiff was injured by an allegedly defective punch press and sued the machine's manufacturer and distributor. The manufacturer settled with plaintiff, and the court determined the settlement was in good faith (Code Civ. Proc., § 877.6). The distributor's cross-complaint against the manufacturer for indemnity was dismissed (Code Civ. Proc., § 877.6, subd. (c)). The distributor then settled with plaintiff, and the manufacturer's cross-complaint was similarly dismissed. Both defendants appealed from the dismissal of their respective cross-complaints.

The court agreed the manufacturer's cross-complaint was properly dismissed because it did "not contend that its liability to plaintiff was premised *solely* upon any act or omission of [the distributor] . . . ." (*Id.*, at p. 540, italics added.) The distributor's cross-complaint, on the other hand, sought "total indemnification on the basis of alleged implied and expressed warranties, and, also on the theory of implied indemnity, alleging that any liability on its part would be premised solely upon its status as a distributor of the press, i.e., that it served as a mere conduit in the chain of distribution of a defectively manufactured or designed product." (*Id.*, at p. 538.) Dismissal of that cross-complaint was reversed. The court explained, "we are of the opinion that, absent statutory authority to the contrary, justice de-

mands total indemnity where the liability of a completely blameless party is premised solely upon the tortious act or omission of another. Accordingly, we hold that the doctrine of equitable or total indemnity continues to exist separate and distinct from that of comparative indemnity." (*Id.*, at p. 542.) We find this conclusion compelling.

But, we must report, there is more. Three years before *Huizar*, the Court of Appeal for the Third District dealt with the same question—and two justices reached a contrary conclusion (*City of Sacramento* v. *Gemsch Investment Co.* (1981) 115 Cal.App.3d 869 [171 Cal.Rptr. 764]). The holding in *Gemsch* spawned a series of decisions confirming the demise of common law equitable indemnity. *Huizar*, however, does not acknowledge the existence of *Gemsch* or its progeny.

In *Gemsch* the plaintiff was injured when she slipped on seeds which had fallen to the sidewalk from municipally owned palm trees. She sued the city and owners and tenants of adjacent property. By city ordinance the latter defendants were responsible for keeping the sidewalk clean and free of debris. All defendants but the city settled, and the court granted summary judgment against the city on its cross-complaint for indemnity based on the good faith settlements. On appeal the city argued its cross-complaint was for total indemnity based on the theory of implied contract (i.e., the ordinance placing responsibility for sidewalk maintenance on the settling defendants) and Code of Civil Procedure section 877.6, subdivision (c) was not a bar to cross-complaints for total indemnity.

The *Gemsch* majority disagreed: "Where the transaction rests upon related facts, either concurrent or successive, joint or several, which legally create a detriment compensable against multiple actors, the right of indemnity should follow [*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578] guidelines, unless a contract or statute otherwise provides." (*Id.,* 115 Cal.App.3d at p. 877.) The court found "no contractual or statutory right in appellant to indemnity" based on the ordinances (*id.,* at p. 875) and concluded summary judgment was properly granted as to the settling defendants because the settlement precluded all claims against them for equitable indemnity, total or partial. (*Id.,* at p. 877.)

The dissent, however, observed, "the same equitable considerations which originally brought the total indemnity principle into being compel its continuation as a doctrine separate and distinct from that of comparative indemnity. Where one who has committed no affirmative wrongful act is caused to incur liability by the act of another, justice demands total indemnity. . . . I do not read *American Motorcycle* as declaring otherwise; nor

do I read its partial indemnity doctrine, with its ramifications, as achieving the same result. [¶] Total equitable indemnity should not be foreclosed by the 'good faith' settlement of an active wrongdoer and the injured party, leaving the latter free to pursue his claim further against factually innocent, yet remedyless [*sic*], persons. Without reaching the merits of the cross-complaint here, I . . . would reverse the summary judgment, thus permitting the appellant to attempt to bring itself within the total indemnity doctrine." (*Id.*, at pp. 878-879 (dis. opn. of Paras, Acting P. J.).)

*Gemsch* was followed in *Kohn* v. *Superior Court* (1983) 142 Cal.App.3d 323 [191 Cal.Rptr. 78]. There, plaintiffs purchased a home and only later discovered it had previously been damaged by fire. They sued the real estate broker for misrepresentation and breach of fiduciary duty for failing to disclose the damage and the company which performed the repairs for negligence. The repair company settled with plaintiffs and obtained a dismissal of the broker's cross-complaint for total and partial indemnity. The Court of Appeal affirmed, observing, "[*Gemsch*] did conclude . . . the decision in *American Motorcycle Assn.* [v. *Superior Court, supra,* 20 Cal.3d 578] had absorbed the older type equitable indemnity into the new comparative indemnity, leaving no equitable indemnity from a codefendant who has settled in good faith." (*Id.*, at p. 330.)

*Lopez* v. *Blecher* (1983) 143 Cal.App.3d 736 [192 Cal.Rptr. 190] followed suit. There, the plaintiff sued the owner of one automobile involved in an accident and the driver of another for personal injuries. The driver settled with the plaintiff before trial and sought dismissal of the owner's cross-complaint for indemnity, claiming he was "discharged from further liability for total, partial or comparative indemnity . . . ." (*Id.*, at p. 738.) The cross-complaint was dismissed. Although Division One of this court acknowledged the owner's liability was only vicarious (see Veh. Code, § 17150), the court failed to distinguish the concepts of total and partial indemnity. Instead, it concluded, "the statutory policy to encourage settlement . . . would be defeated if a defendant whose liability is imputed by statute is held to retain the right to claim partial or comparative indemnity against a joint tortfeasor who has made a good faith settlement with the injured plaintiff." (*Id.*, at p. 741.) But what of total indemnity? The question is never addressed in the opinion.

The Second District did consider the matter in *Turcon Construction, Inc.* v. *Norton-Villiers, Ltd.* (1983) 139 Cal.App.3d 280 [188 Cal.Rptr. 580] and provided a reasonable resolution of the issue *Lopez* failed to address. There, the plaintiff motorcyclist was injured in a collision with an automobile. He sued the corporate owner of the other vehicle and the manufacturers

of the motorcycle. The latter settled with plaintiff and successfully obtained dismissals of the owner's cross-complaint for equitable indemnity. The court affirmed, but suggested a cross-complaint for total indemnity might be treated differently under certain circumstances—at least one of which is applicable to our case: "[The] cross-complaint does not rest on any contractual indemnity nor does it allege that its liability vis-à-vis respondents is one imposed as a matter of law because of its relationship with respondent. [Citation.] In summary that [cross-]complaint contains no allegations which could provide the basis for a shifting of total liability to respondent." (*Id.*, at p. 284.)

Essentially, *Turcon* articulated a two-prong test to determine whether a cross-complaint survives the cross-defendant's settlement with the plaintiff: The cross-complainant's liability must be vicarious and the cross-complainant must also have a special "relationship" with the cross-defendant which makes it equitable for the former to shift *all* liability to the latter. This is but a reaffirmation of the doctrine of equitable indemnity as it existed before *American Motorcycle.*

In *Kohn,* of course, each defendant was alleged to have engaged in tortious conduct, and the court was not presented with a defendant whose liability was solely vicarious or derivative. *Lopez* and *Turcon did* treat with vicariously liable defendants—owners of vehicles involved in an accident whose liability was imposed by statute. Under Vehicle Code section 17150, the owners were liable for any negligence of the drivers of their vehicles, but the liability was limited in dollar amount and the owners had a statutory right to total indemnity against the drivers (Veh. Code, § 17151). The owners did not seek indemnity against the individuals with whom a "special relationship" was recognized in either case or statutory law, however: In *Lopez* the owner cross-complained against the driver of the other car involved in the collision, and in *Turcon* the owner sought indemnity from the manufacturer of the other vehicle. Thus, these cases are distinguishable on their facts, and their observations on the demise of total equitable indemnity are not persuasively applied to the case before us.

*Torres* v. *Union Pacific R. R. Co.* (1984) 157 Cal.App.3d 499 [203 Cal.Rptr. 825], a post-*Huizar* decision, took another tack. There, the plaintiff was injured while changing a tire on his car with an automobile jack borrowed from his employer. He sued the employer and the manufacturer of the jack. As in *Huizar,* both defendants settled, and the trial court determined the settlements were in good faith and granted summary judgment on each cross-complaint for indemnity.

The primary issue on appeal was whether the employer's sliding scale, or "Mary Carter," settlement was in good faith. The court affirmed the dismissal of the employer's cross-complaint against the manufacturer because plaintiff premised the liability of his employer on the wrongful refusal to rehire him after the accident. Thus, observed the court, the employer was not seeking total equitable indemnity based on solely vicarious or derivative responsibility. But the court added, "Cases such as *Huizar* . . . create an exception to the harsh interpretation of sections 877 and 877.6, rejected above, which bars equitable indemnity in almost all cases. They do so by declaring that suits for total indemnity are not within the purview of section[s] 877 and 877.6 . . . . With the broader definition of good faith adopted here [i.e., 'a defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be' (*id.*, at p. 509)], however, it may well be urged this exception is not necessary and that all cases of indemnity, total and partial, should be subject to sections 877 and 877.6." (*Id.*, at p. 510, fn. 5.) We need not consider whether a disproportionately low settlement may be a basis for finding a lack of good faith (see, *post*), because we cannot agree with the suggestion *Huizar* created an exception to section 877.6 or that the good faith settlement procedure ought to have any application to complaints for full indemnity. Section 877.6, by its express terms, applies only to cross-complaints based on *comparative fault;* a cross-complaint for common law equitable indemnity, which is just another definition of total indemnity, is not that.

## IV

Black's Law Dictionary defines tortfeasor as "A wrong-doer; one who commits or is guilty of a tort." ((5th ed. 1979) p. 1335.) Retailers and others in the manufacturing and marketing chain of a defective product whose liability is imposed without fault hardly fit the definition; however public policy demands they respond in damages to the injured consumer although they may be "factually innocent" of any wrongdoing (*City of Sacramento* v. *Gemsch Investment Co., supra,* 115 Cal.App.3d at p. 879 (dis. opn. of Paras, Acting P. J.)). Thus, from the standpoint of the plaintiff in a strict products liability action, the retailer is viewed as a "tortfeasor" with joint and several liability, although he hardly matches the settled definition of the term quoted above.

But how then do we categorize the conduct of the innocent retailer vis-a-vis the manufacturer of the completed product or the allegedly defective part? As to the person or entity ultimately responsible for the defective product, the retailer is neither a wrongdoer nor a tortfeasor. And where

there is no wrongdoing to *apportion,* the principles of comparative fault cannot apply. This was the conclusion in *E. L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366 [187 Cal.Rptr. 879]. Relying primarily on New York decisions, Division Two of this court determined: "[A] vicariously liable tortfeasor may still obtain full indemnity even though *American Motorcycle* now allows partial indemnity to be obtained on a comparative fault basis in appropriate cases." (*Id.,* at p. 376.) The court also observed, "To conclude otherwise would counter basic 'principles of common-law indemnification between vicariously liable tortfeasors and tortfeasors guilty of the acts and omissions causing the harm. In short, the apportionment rule applies to those who in fact share responsibility for causing the accident or harm, and does not extend further to those who are only vicariously liable . . . .' (*Rogers* v. *Dorchester Associates* [1973] 32 N.Y.2d 553, 566 [347 N.Y.S.2d 22, 32].) [Fn. omitted.]" (*Ibid.*) *E. L. White* was a postjudgment action for indemnity, but its rationale is nevertheless apt when considering the viability of cross-complaints for total equitable indemnity against settling tortfeasors.

Accordingly, we agree with *Huizar* and Justice Paras' dissent in *Gemsch.* Implied indemnity based on common law equitable principles was not subsumed by *American Motorcycle* and still exists in those situations where the indemnitee's liability is vicarious or derivative and he is entitled to total, not partial, indemnity. (*Huizar* v. *Abex Corp., supra,* 156 Cal.App.3d 534; *E. L. White, Inc.* v. *City of Huntington Beach, supra,* 138 Cal.App.3d 366.)

V

Finally, we respond to Neonex' contention that the conclusion we reach today will have a chilling effect on pretrial settlements. We perceive the rule in this case as deterring *only* those settlements by defendants who are clearly at fault and attempt to buy peace too cheaply at the expense of codefendants who are merely vicariously liable. Although our holding may discourage such settlements, we believe promotion of this state's policy to assign fiscal responsibility in proportion to fault outweighs the policy of encouraging settlement in this limited instance.

Moreover, recognition of the continued viability of a cross-complaint for total equitable indemnity will not foster uncertainty in settlements. The allegations of the complaint and cross-complaint and an analysis of the facts of the particular action will permit parties and the courts to determine whether common law equitable indemnity or comparative indemnity is being sought. (See, e.g., *Torres* v. *Union Pacific R. R. Co., supra,* 157 Cal.App.3d 499.)

The judgment dismissing Empire's cause of action for total indemnification only is reversed.[5] In all other respects, the judgment is affirmed. Appellant is entitled to costs on appeal.

Trotter, P. J., and Wallin, J., concurred.

---

[5]We do not reach Empire's contentions concerning Code of Civil Procedure section 1021.6 at this time. Empire's right to recover attorneys fees, if any, accrues only after it has prevailed on its cross-complaint for implied indemnity.