15 F.3d 1090
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 TRITON ENGINEERING COMPANY, LTD., a Hong Kong Corporation,
Plaintiff-Appellee,
v.
FORD & VLAHOS, a professional corporation; John J. Ford,
III, an individual, Defendants-Appellants.
 No. 88-15295.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 14, 1993.*
Decided Jan. 18, 1994.
 
 Before: LAY,** HALL, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 This is an appeal by John J. Ford, III, a citizen of California, and Ford & Vlahos, a professional corporation organized and existing under the laws of the state of California, (hereinafter designated collectively as "Ford"). In 1981, John Ford entered into a joint venture agreement with Peter W. Hocking and Kenneth Oliver, two Australian citizens, for the purpose of selling aircraft, parts and equipment. An Australian corporation, Ford & Vlahos, Pty., Ltd., Australia, ("Ford & Vlahos, Australia") was incorporated with Hocking, Oliver and John Ford as the three directors and equal shareholders. The Commonwealth of Australia appointed the corporation to act as the authorized agent for the sale of its Grumman Tracker aircraft, which is the subject of this litigation.
 
 
 3
 In 1984, John Ford resigned as a director and gave up his share in the Australia corporation, but retained his right to one third of the profits. Ford's role changed from that of a director to that of an agent of Ford & Vlahos, Australia, with authority to enter into agreements for the corporation and to market the Tracker aircraft package. In early 1985, Ford began negotiating the sale of the Tracker package to Triton Engineering Co., Ltd., a Hong Kong corporation ("Triton"), through its general manager and agent Thomas Hsueh ("Hsueh").
 
 
 4
 Pursuant to a Consolidated Purchase Agreement and Escrow Agreement, Triton deposited the anticipated $1,500,000.00 purchase price, and an additional $200,000, in an account at Barclays Bank in California. This money was to be paid to Ford upon the satisfaction of certain conditions relating to the sale of the aircraft. Until those conditions were satisfied, the deposited funds were to remain in the escrow account and Triton was to receive all of the interest.
 
 
 5
 In May 1985, upon representations from Ford that the Australian government required that the purchase amount be transferred to an Australian government account, Triton arranged for a transfer of the proceeds of the Barclays account, in the amount of $1.5 million, to the Tracker escrow account, also at Barclays Bank in California. Through escrow instructions, Triton directed Barclays that the funds were to remain in U.S. dollars, and were not to be transmitted to Australia unless and until certain conditions were met, including governmental approval of the sale by both the Australian and United States governments. In July and August 1985, apparently without Triton's consent, Ford arranged for Barclays to forward a substantial portion of Triton's deposited funds to Hocking, as trustee for Ford & Vlahos, Australia. The funds were transferred through Australia & New Zealand Bank, not Barclays as Triton had directed they be in the event of a transfer.
 
 
 6
 Later in 1985, Hocking and Oliver, directors and now sole shareholders of Ford & Vlahos, Australia, formed another Australian corporation named Defence Equipment, Pty., Ltd. ("Defence"). In January 1986, Defence was appointed the agent of the Commonwealth of Australia for the sale of the Grumman Tracker aircraft in the place of Ford & Vlahos, Australia. In March 1986, Triton learned that Ford did not have the authority to bind the Australian government as its sole agent in connection with the aircraft package, and that Defence was the sole agent of the Australian government for that purpose. Later in 1986, funds from the Ford & Vlahos Australian Tracker account were transferred to Defence. A telex from Hocking informed Hsueh that the funds transferred by Ford were not deposited in an escrow account of the Australian government and were not accompanied by any specific instructions from Ford or Barclays.
 
 
 7
 In April 1986, in a letter from Hsueh to Ford, Triton requested the return of the $1.5 million plus interest. In November 1986, Triton filed this suit, naming as defendants John Ford, Ford & Vlahos of California, Barclays of California, and Robert Moriarty (vice president and general manager of Barclays), alleging, among other things, fraud, conspiracy to defraud, breach of contract, breach of fiduciary duty, and conversion. In January and February 1987, respectively, John Ford and Hocking each returned portions of Triton's deposit. In December 1987, Barclays and Moriarty filed a third party complaint naming Defence and Ford & Vlahos, Australia (collectively the "Australian Corporations") as defendants, seeking indemnity for any damages assessed against Barclays and Moriarty in the Triton suit and imposing a constructive trust on all funds transferred from Barclays to the Australian Corporations. In January 1988, Triton dismissed Barclays and Moriarty as defendants and Barclays and Moriarty dismissed the third party complaint against the Australian Corporations.
 
 
 8
 Triton proceeded to a bench trial against Ford, which lasted from April 25 through May 9, 1988. At the trial, officers of the Australian corporations testified on behalf of Triton. On May 25, 1988, judgment was entered against Ford for breach of contract, breach of fiduciary duty and conversion; the court ruled in Ford's favor on the issues of fraud and punitive damages. Judgment was entered against Ford in the amount of $551,685.53. Ford filed a motion for a new trial and other relief on the grounds, among other things, that shortly before the trial Triton entered into a settlement agreement with the non-party Australian Corporations and shareholder witnesses against Ford (collectively, the "Settling Parties"). The settlement agreement was entered into three days before trial and provided that for a $15,000 cash payment plus the larger of two possible sums to be determined at some future date,[1] the Settling Parties were forever released from any liability to Triton based on Ford's attempted sale of the aircraft and spare parts to Triton. In its motion for a new trial, Ford argued that the Settling Parties were joint tortfeasors with Ford, and joint obligors on Ford's contract with Triton, and therefore that California Code of Civil Procedure Sec. 877 was applicable. Ford argued that the settlement agreement prejudiced it at trial, and that had the settlement agreement been disclosed,[2] Ford's liability would have been dramatically diminished.
 
 
 9
 When the district court heard Ford's motion for a new trial based on the disclosure of the settlement agreement, it stated that the threshold issue in determining whether it would reopen the proceedings was "whether these obligations are joint so that you get ... some benefit from their side." Brief for Appellant at 12. The district court acknowledged that if it did reopen the case, Ford "could be totally off the hook for over a half million dollars." Id. The district court questioned whether to approach the joint issue "from the point of view of the causes of action that were specifically alleged against Ford and the judgment entered, or whether ... to look at the joint issue as being a deal." Id. After briefing by the parties, the district court ruled on Ford's motion, and concluded:
 
 
 10
 Upon a review of all of the record, this court finds and concludes that the settling parties are not joint tort feasors with respect to the claims asserted by plaintiff against these defendants. The court also finds and concludes that the settling parties are not joint obligors on the contract between plaintiff and defendants. Although the settling parties had some role in the transactions giving rise to this suit, the court does not believe that that role is one of joint tort feasor or joint obligor. The settling parties have not been claimed, or been found, to be liable for the same tort against plaintiff as defendants have. In addition to the claims asserted, the evidence of the relationships among defendants and the settling parties is not sufficient to find them to be joint tort feasors.
 
 
 11
 Defendants' Excerpts of Record ("EOR") 4(d) at 2-3.
 
 
 12
 The district court further concluded that the Settling Parties and Ford were not co-obligors on the contract, and consequently, the district court did not hear evidence regarding the effect of the settlement on Ford's liability. EOR 4(d) at 3, 4. Ford appeals from the district court's judgment rendered in favor of Triton in the amount of $551,685.53.
 
 DISCUSSION
 
 13
 Ford's principal contention on appeal is that the Settling Parties were joint tortfeasors and joint obligors with Ford on the contract with Triton, and thus that the settlement between the Australian parties and Triton is subject to the provisions of Cal.Civ.Proc.Code Secs. 877, 877.5 and 877.6. Ford argues that California law bars double recovery and requires that the judgment against Ford be reduced by the value of the settlement with the Australian Corporations, and that Ford was greatly prejudiced by the Settling Parties' failure to give the district court prompt notice of the sliding scale agreement, as required by California law. See Cal.Civ.Proc.Code Sec. 877.5. Ford asks that the case be remanded so that the district court may consider evidence of the settlement agreement between Triton and the Settling Parties and to determine the value and good faith of the settlement, pursuant to Cal.Civ.Proc.Code Secs. 877.5 and 877.6.
 
 
 14
 Under California law, settlements involving less than all of a group of related tortfeasors are governed by Cal.Civ.Proc.Code Sec. 877, which provides:
 
 
 15
 Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:
 
 
 16
 (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater.
 
 
 17
 Id.
 
 
 18
 California courts construe Sec. 877's requirement of "tortfeasors claimed to be liable for the same tort" very broadly. The statute applies not just to traditional "joint tortfeasors" but also to concurrent and successive tortfeasors. E.g., Mesler v. Bragg Management Co., 702 P.2d 601, 607-08 (Cal.1985). California courts have indicated that "[t]he only relevant question in applying section 877 is whether there was one indivisible injury caused by two or more parties." May v. Miller, 278 Cal.Rptr. 341, 344 (Cal.Ct.App.1991). Accordingly, courts apply Sec. 877 to almost every situation in which two or more parties might share liability. See, e.g., Mesler, 702 P.2d at 607-10. (corporation and its alter ego); May, 278 Cal.Rptr. at 343-44 (insurance broker and insurance company); Standard Pac. v. A.A. Baxter Corp., 222 CalRptr. 106, 113-15 (Cal.Ct.App.1986) (all derivative and vicarious liability).
 
 
 19
 Kohn v. Superior Court, 191 Cal.Rptr. 78 (Cal.Ct.App.1983) demonstrates the expansive scope of Sec. 877. In Kohn, a home buyer sued a pest-inspection company, a construction company, and the seller for defects in the purchased residence. After an out-of-court settlement, the plaintiffs dismissed the pest-inspection and construction companies. The court found all three defendants to be within the scope of Sec. 877 and therefore nullified the seller's cross-complaint for indemnity against the settling defendants. The court held that, despite the fact that the buyers sued the sellers for one tort (misrepresentation) and the pest-control and construction companies for a different tort (negligent inspection and repair), "there was but one injury, purchase of a house which was worth less than plaintiffs believed." Id. at 82. Thus, the court concluded that Sec. 877 applied because "[t]he alleged tortious activities by the contractor, pest control inspector and seller were not independent, but combined to create one indivisible injury which took place when the sale was consummated." Id.
 
 
 20
 In the present case, Ford worked as the agent of the Australian Corporations and procured the transfer of Triton's funds. Barclays' third party action against the Australian Corporations serves to illustrate its involvement in the case. The damage to Triton cannot be said to be divisible in any sense of the word. Triton's loss relates directly to the loss of its deposit with the bank. The district court failed to explain how this constituted separate and divisible damages. This was an abuse of discretion warranting remand. See Northern Alaska Envtl. Ctr. v. Lujan, 961 F.2d 886, 889 (9th Cir.1992) (district court abuses its discretion by acting on an erroneous interpretation of the law).
 
 
 21
 Ford also asserts that it was prejudiced at trial because it could not properly impeach the testimony of Triton and the Australian Corporations. We find that the district court erred in not requiring disclosure of the settlement agreement. As stated in Moreno v. Sayre, 208 Cal.Rptr. 444 (Cal.Ct.App.1984):
 
 
 22
 [Section 877.5] was adopted as at least a partial solution to the problem of the collusive nature of ["sliding scale"] agreements and the unfair prejudice to the non-settling defendant. It requires the parties to such an agreement to advise the court of the terms of the agreement and requires the court, upon request, to tell the jury ... [about] "the possibility that the agreement may bias the testimony of the alleged tortfeasor or tortfeasors who entered into the agreement."
 
 
 23
 Id. at 449. The possible bias exists whether or not the Australian Corporations were named defendants in the action against Ford. Triton should not be able to defeat the statutory purpose by selectively dismissing certain defendants.
 
 
 24
 This matter is remanded to the district court for its reconsideration of the defendants' motion for a new trial in accord with our holding. The district court may grant a new trial and in its discretion reopen the proceedings and take evidence or it may simply consider the evidence of the settlement and adjust the judgment accordingly. The parties should, of course, be given every opportunity to brief and present their respective positions under the law before the district court.
 
 
 25
 REVERSED AND REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The agreement constitutes a "sliding scale" agreement under California law because the amount to be paid by the Settling Parties to Triton was contingent on Triton's recovery from Ford at trial. See Cal.Civ.Proc.Code Sec. 877.5(b) (" 'sliding scale recovery agreement' means an agreement or covenant between a plaintiff or plaintiffs and one or more, but not all, alleged tortfeasor defendants, which limits the liability of the agreeing tortfeasor defendants to an amount which is dependent upon the amount of recovery which the plaintiff is able to recover from the nonagreeing defendant or defendants....")
 
 
 [2]
 "Where an agreement or covenant is made which provides for a sliding scale recovery agreement between one or more, but not all, alleged defendant tortfeasors and the plaintiff or plaintiffs ... [t]he parties entering into any such agreement or covenant shall promptly inform the court in which the action is pending of the existence of the agreement or covenant and its terms and provisions."
 Cal.Civ.Proc.Code Sec. 877.5(a)(1) (emphasis added).