[No. B023610. Second Dist., Div. Two. Nov. 25, 1986.]

RELIANCE ELECTRIC COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CITY OF LOS ANGELES, Real Party in Interest.

## COUNSEL

McHale & Connor and Bruce Janger for Petitioner.

No appearance for Respondent.

Dorr, Cooper & Hays, George L. Waddell and Harvey I. Wittenberg for Real Party in Interest.

## OPINION

**THE COURT.***—This petition for a writ of mandate challenges an order entered by respondent court following its grant of a motion for approval of the good faith of a settlement. (Code Civ. Proc., § 877.6, subds. (a) and (b).) Though the court ruled the settlement was made in good faith, it declined to dismiss a claim for indemnity which an objecting defendant had made against one of the settling defendants. The cross-defendant then filed this petition, seeking a writ of mandate directing the trial court to dismiss the

---

*Before Beach, Acting P. J., Gates, J., and Fukuto, J.†

†Assigned by the Chairperson of the Judicial Council.

indemnity claim in its entirety. We have determined the petition should be granted.

The plaintiff in the underlying action was injured when a cargo crane at the Port of Los Angeles malfunctioned, dropping a cargo container on the truck he was driving. He filed a personal injury action in 1982 against the City of Los Angeles (City), which owned the crane, and petitioner Reliance Electric Company, which, under contract with the crane's manufacturer, had designed and manufactured certain of the crane's electrical controls and supplied its main hoist brakes. Plaintiff did not sue the operator of the crane, Marine Terminals Corporation, which was his employer.

Marine Terminals, as assignee of the berth at the harbor, had given the City a hold-harmless agreement, and the City promptly tendered the defense of the case to Marine Terminals. The record suggests that Marine Terminals' liability insurer accepted the tender and has at all times represented the City in this action.

In 1986 the City filed a cross-complaint for indemnity against Reliance and against the crane's manufacturer (Ishikawajima-Harima Heavy Industries Co., Ltd., hereinafter IHI) and its seller (Nissho-Iwai American Corp., hereinafter Nissho).[1] This cross-complaint was based in part on a contractual hold-harmless agreement Nissho had given the City when selling it the crane. (Apparently the City had tendered the defense of the case in 1984 to Nissho; Nissho's liability insurer had acknowledged coverage but noted that a defense was already being provided.) Later in 1986 the City tendered the defense of the case to Reliance and requested reimbursement of its previously incurred costs of defense; Reliance denied the requested reimbursement, and eventually declined the tender as well.

Soon afterward, the plaintiff's claim was resolved in its entirety by a settlement, whereby an agreed sum was paid on behalf of Reliance, Nissho, and IHI to plaintiff and his employer's worker's compensation carrier, and plaintiff released all defendants, including the City. Of the settlement package, Reliance contributed approximately 75 percent, and Nissho and IHI the balance. The City did not participate in the settlement. The City thereafter refused to abandon its claim against Reliance for reimbursement of its costs of defense.

Because the City did not concede that the settlement terminated its reimbursement claim, Reliance moved for court approval of the good faith of the settlement and for an order explicitly dismissing the City's cross-

---

[1] Other cross-complaints were also filed.

complaint for indemnity. The City opposed the motion, contending the settlement was an oppressive one motivated by Reliance's bad faith intent to avoid reimbursing the City's defense costs, and relying on section 1021.6 of the Code of Civil Procedure as a further basis for its legal fees claim.[2] The court approved the settlement as entered in good faith, but declined to dismiss the City's claim for indemnification of costs of defense. Reliance petitioned for a writ of mandate compelling the trial court to dismiss the City's indemnity claim. On October 28, 1986, we issued an order directing the City to file a brief in opposition to the petition.

The City makes three arguments in support of its position: first, that its cross-complaint is not barred by the settlement and sections 877 and 877.6 of the Code of Civil Procedure; second, that a section 1021.6 claim for reimbursement of defense costs is not barred by sections 877 and 877.6; and third, that the trial court abused its discretion in approving the good faith of the settlement.[3] We are persuaded by none of these arguments.

■ 1. *Is the City's cross-complaint barred by sections 877 and 877.6?* Following court approval of the good faith of a settlement, the Code of Civil Procedure expressly discharges "all liability for any contribution to any other tortfeasors" (§ 877, subd. (b)) and bars "any further claims" of "any other joint tortfeasor" for "equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (§ 877.6, subd. (c).)

The City's position is that its claim is not barred by these provisions. It contends (a) it is blameless with respect to the crane accident, and therefore cannot be considered a "tortfeasor"; (b) its claim is not one for contribution or "equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault," but rather one for complete indemnity—a type of claim not mentioned in section 877 or 877.6 (see *Huizar* v. *Abex Corp.* (1984) 156 Cal.App.3d 534, 541 [203 Cal.Rptr. 47]); (c) reimbursement of costs of defense is a statutory claim,

---

[2] Section 1021.6 provides: "Upon motion, a court after reviewing the evidence in the principal case may award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the indemnitee through the tort of the indemnitor has been required to act in the protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of the opportunity to do so, and (c) that the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in indemnity or that the indemnitee had a final judgment entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict."

[3] To preserve the third contention, the City filed its own petition for a writ of mandate challenging the approval of the good faith of the settlement (No. B024110).

created by section 1021.6, which sections 877 and 877.6 do not purport to bar.

The Courts of Appeal are not in agreement on whether an approved settlement bars all cross-complaints for complete indemnity. Some cases have held sections 877 and 877.6 do not bar certain types of cross-claims for full indemnity against settling defendants. (See *Huizar* v. *Abex Corp., supra,* 156 Cal.App.3d 534; *Angelus Associates Corp.* v. *Neonex Leisure Products, Inc.* (1985) 167 Cal.App.3d 532 [213 Cal.Rptr. 403]; *E.L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366 [187 Cal.Rptr. 879].) Rejecting these decisions is *IRM Corp.* v. *Carlson* (1986) 179 Cal.App.3d 94 [224 Cal.Rptr. 438], relying on several earlier cases and holding that an indemnity cross-claim does not survive sections 877 and 877.6 if it is not based on an express contract for indemnification.

We need not choose between these two lines of authority to resolve this case. Unless based on a contractual promise of greater scope, a cross-claim for total indemnity, like one for partial indemnity, is a claim for reimbursement of sums paid by a defendant in satisfaction of more than its apportioned share of the plaintiff's judgment. Here the City paid nothing to the plaintiff and, because the settlement terminated its exposure, will pay nothing. The settlement thus removed the main element of the City's cross-claim for indemnity, by ending the possibility that the City would ever satisfy more than its proportionate share of a judgment.[4]

The City reminds us an indemnity claim can extend beyond reimbursement for amounts paid in satisfaction of a judgment, to reach costs of defense as well. (*Bear Creek Planning Com.* v. *Title Ins. & Trust Co.* (1985) 164 Cal.App.3d 1227 [211 Cal.Rptr. 172].) But the distant relation tying the City to Reliance is not comparable to the insurance contract that linked the parties in *Bear Creek,* a title insurer and an unincorporated association of the homeowners whose titles it insured.

■ 2. *Does the City's section 1021.6 claim survive the settlement?* The City correctly argues that sections 877 and 877.6 do not expressly extinguish the right to move for an award of attorney's fees under section 1021.6. But loss of the opportunity to move for such an award is a necessary result of

---

[4]Thus we need not resolve the City's contention that its indemnity claim survives the settlement because it was sued only due to its status as owner of the crane or its relationship to the wrongdoer. (See *Turcon Construction, Inc.* v. *Norton Villiers, Ltd.* (1983) 139 Cal.App.3d 280, 284 [188 Cal.Rptr. 580].) In passing, however, we note that the City is not in a position akin to that of a strictly liable but blameless retailer of a defectively manufactured product resold to a retail customer in a factory-sealed container, or that of a vicariously liable but blameless owner of an automobile negligently driven by a permissive user, or that of a similarly blameless employer of a negligent employee.

court approval of the good faith of a settlement in which a plaintiff has released the defendant against whom the fee award would have been sought. The terminology of section 1021.6 leaves no doubt that a fee award may follow the case's adjudication, not its settlement. The statute expressly requires that the trial court review the evidence; that the claimant have prevailed on its claim for implied indemnity; and that the claimant have won the case on summary judgment, nonsuit, or directed verdict (all judgments on the merits) or been found free of fault by the trier of fact. Because of the settlement, none of these conditions can be satisfied here—unless the court were to try the personal injury case despite the settlement. And the superior courts have more pressing business than the trial of settled tort cases.

The City argues the unfairness in depriving an innocent defendant of an opportunity to sue for reimbursement of its legal fees. ■ Venerable is the rule that litigants—even successful ones—bear their own legal fees, unless otherwise provided by their agreement or by statute. (See Code Civ. Proc., § 1021.) This doctrine is not displaced by the more recent principle promoting equitable apportionment of losses among the parties at fault. As the Supreme Court has observed, " 'Few things would be better calculated to frustrate [section 877's] policy, and to discourage settlement of disputed tort claims, than knowledge that such a settlement lacked finality and would lead to further litigation with one's joint tortfeasors, and perhaps further liability.' " (*American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 604 [146 Cal.Rptr. 182, 578 P.2d 899], quoting from *Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231, 236 [132 Cal.Rptr. 843].) We do not read section 1021.6 as affording a basis for liability insurers routinely to conduct a second round of litigation among themselves over apportionment of legal costs after the dispute among the parties has been resolved.

■ 3. *Should the good faith of the settlement have been disapproved?* Finally, the City contends Reliance did not make the settlement in good faith because it intended unfairly to avoid its obligation to pay the City's legal bill. In our view, approval of the settlement was within the trial court's discretion. (See *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 502 [213 Cal.Rptr. 256, 698 P.2d 159].) The destruction of the section 1021.6 claim was one factor to be considered. (*IRM Corp.* v. *Carlson, supra,* 179 Cal.App.3d at p. 111.) And the court must consider "the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499.) But it would take an extraordinary showing of such misconduct before a trial judge would be required to reject a settlement as unfair to a party who was being dismissed from the action without paying anything. Reliance was not responsible for the City's insurer's decision to permit its defense costs to approach or surpass the value of the suit being resisted.

Nor did the record placed before the trial court on the motion for approval of the settlement compel concurrence with the City's belief that it was sure to be found blameless if the case went to trial. The City was owner of the malfunctioning crane, and there was evidence before the court that it had exercised some inspection and maintenance functions. If the cause of the accident was a defect present when the crane was delivered, the City might have been found to have some duty to discover it in the period before the accident. The City did not show how long this period was, nor whether the accident was the first occasion this defect caused an observable malfunction. Indeed, the cause of the accident was not shown to the court; the City merely cited Reliance's failure in its moving papers and answers to interrogatories to specify facts showing fault on the City's part. Reliance, quite properly focusing on the proportionality of the settlement, had no reason to demonstrate fault on the part of a defendant getting a free release. And the burden of proof was placed squarely on the City by section 877.6, subdivision (d).

This is a proper case for issuance of a peremptory writ in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].) All parties were informed by order that this court was considering issuing a peremptory writ in the first instance. The case having been fully briefed, issuance of an alternative writ would add nothing to the exposition of the issues.

Let a peremptory writ of mandate issue, directing respondent court to vacate its order of October 14, 1986, determining that real party in interest is not precluded from proceeding under section 1021.6 of the Code of Civil Procedure, and to enter a new and different order dismissing real party's cross-complaint in its entirety. The stay ordered by this court on October 28, 1986, having served its purpose, is dissolved.