[No. A028016. First Dist., Div. One. Mar. 17, 1987.]

HARRY W. STRATTON et al., Cross-complainants and Appellants, v. PEAT, MARWICK, MITCHELL & CO., Cross-defendant and Respondent.

**COUNSEL**

Rankin, Oneal, Center, Luckhardt, Lund & Hinshaw, Gary S. Vandeweghe and Selby Brown, Jr., for Cross-complainants and Appellants.

McCutchen, Doyle, Brown & Enersen, Barry P. Goode, Dale E. Barnes, Jr., and Mary Lu Christie for Cross-defendants and Respondents.

## Opinion

**NEWSOM, J.**—Appellants and cross-complainants Harry W. Stratton and Don L. Van Eeghen appeal from a summary judgment entered on June 11, 1984, in favor of respondent and cross-defendant, Peat, Marwick, Mitchell & Co. pursuant to Code of Civil Procedure section 437c.

The original complaint in this action was filed by plaintiff McPhail's, Inc. (hereafter McPhail's) on November 6, 1981, against appellants Stratton and Van Eeghen, alleging breach of sales contract, fraud and misrepresentation in connection with appellants' sale of their business, Miller's Home Appliances, Inc., to McPhail's.

On December 30, 1981, appellants filed a cross-complaint against respondent Peat, Marwick, Mitchell & Co. (hereafter PMM), alleging causes of action for indemnity, breach of contract and negligence with respect to accounting services performed by PMM. At the same time, appellants filed a separate action against PMM in the superior court for the County of Santa Clara, case No. 490558, alleging breach of contract and negligence based upon the same transactions. The parties subsequently agreed to sever the breach of contract and negligence claims in the cross-complaint and to consolidate them with case No. 490558, leaving only the indemnity claim in this case.

On April 13, 1984, respondent, PMM, filed a motion for summary judgment on the cross-complaint for indemnity. The motion was granted solely on the basis that the cross-complaint was barred by the good faith settlement between PMM and McPhail's.

The facts pertinent to this appeal may be summarized as follows.

Appellants were the sole stockholders in Miller's Home Appliances, Inc., a corporation which operated an appliance store in San Jose. In April 1980, appellants began to negotiate the sale of Miller's to McPhail's, a major appliance retailer in Marin County. A contract of sale was executed on August 4, 1980.

Before the sale was completed, appellants and McPhail's jointly hired respondent, PMM, to review Miller's unaudited financial statements for the months of April, May and June of 1980. McPhail's sought the review in order to determine the appropriate value of Miller's. The financial statements had been prepared by Miller's employees.

In its letter of engagement, respondent disclaimed responsibility for the accuracy of the financial information provided by Miller's employees, stating: "[o]ur engagement to review the financial statements of Miller's cannot be relied upon to uncover errors in the underlying financial information incorporated in the financial statements or irregularities, should any exist. However, we will inform you of any such matters that come to our attention."

On August 1, 1980, three days before the agreement was executed, respondent notified McPhail's and appellants that its prior opinion on the financial statements should not be relied upon, as it had become aware of newly discovered information, the effect of which was to increase the cost of sales by $218,696 and to decrease net income by $214,696.

McPhail's thereafter filed a complaint against appellants. Subsequently, a dispute arose between the parties as to the amount owed respondent in connection with its accounting services. That dispute was resolved by a settlement agreement and mutual release to which McPhail's and PMM were parties. The trial court approved the settlement as having been entered into in good faith pursuant to section 877.6 of the Code of Civil Procedure.

■ Appellants contend that a claim for *total* equitable indemnity is not barred by section 877.6 and that, accordingly, the trial court erred in granting respondent's summary judgment motion.

"Section 877.6 was enacted by the Legislature in 1980 to establish a statutory procedure for determining if a settlement by an alleged joint tortfeasor has been entered into in good faith and to provide a bar to claims of other alleged joint tortfeasors for equitable contribution or partial or comparative indemnity when good faith is shown. According to our Supreme Court, section 877.6 is a codification of one of the principles adopted by it in *American Motorcycle Assn.* v. *Superior Court, supra* [1978], 20 Cal.3d 578, 604 [146 Cal.Rptr. 182, 578 P.2d 899], where the court concluded that 'from a realistic perspective the legislative policy underlying ... [section 877] dictates that a tortfeasor who has entered into a "good faith" settlement [citation] with the plaintiff must also be discharged from any claim for partial

or comparative indemnity that may be pressed by a concurrent tortfeasor.' [Citations.]" (*IRM Corp.* v. *Carlson* (1986) 179 Cal.App.3d 94, 104 [224 Cal.Rptr. 438].)

Appellants contend that the rule announced in *American Motorcycle,* which if applicable prohibits cross-complainants from seeking equitable indemnity from settling defendants, does not apply where the cross-complainant seeks complete, as opposed to partial, indemnity.

The appellate courts are divided on this issue. The majority view holds that "a good faith settlement bars the common law total equitable indemnification claim by a defendant who is only secondarily or vicariously liable, [Citations.]" (*Standard Pacific of San Diego* v. *A. A. Baxter Corp.* (1986) 176 Cal.App.3d 577, 585 [222 Cal.Rptr. 106].) This view was most recently expressed by Division Four of this court in *IRM Corp.* v. *Carlson, supra,* 179 Cal.App.3d 94, where it was held that section 877.8 and *American Motorcycle* abrogated the common law concept of *total* implied equitable indemnity. (*Id.* at p. 109.)

Illustrative of the minority view, upon which appellants rely, is *Huizar* v. *Abex Corp.* (1984) 156 Cal.App.3d 534 [203 Cal.Rptr. 47] wherein the court held: "[W]e are of the opinion that, absent statutory authority to the contrary, justice demands total indemnity where the liability of a completely blameless party is premised solely upon the tortious act or omission of another. Accordingly, we hold that the doctrine of equitable or total indemnity continues to exist separate and distinct from that of comparative indemnity." (*Id.* at p. 542.) ( Accord, *Angelus Associates Corp.* v. *Neonex Leisure Products, Inc.* (1985) 167 Cal.App.3d 532, 542 [213 Cal.Rptr. 403] and *E. L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366, 376 [187 Cal.Rptr. 879].)

In the case at bench, appellants do not have the right to seek complete indemnity from respondent. Total equitable indemnity may be sought only when *all* of the alleged tortious conduct can be attributed to one party. (*Huizar* v. *Abex Corp., supra,* 156 Cal.App.3d at pp. 540-541; *E. L. White, Inc.* v. *City of Huntington Beach, supra,* 138 Cal.App.3d at p. 376.) Here, however, all of the alleged tortious conduct cannot be attributed to respondent. McPhail's complaint charged that appellants made misrepresentations concerning Miller's credit capabilities and the competency of its management. McPhail's also alleged that appellants failed to disclose a criminal proceeding against them for contracting without a license, and that it should be indemnified for the costs of defending the action. Since it is apparent that appellants' liability from McPhail's action cannot be *wholly* attributed to

respondent, they are not entitled to relief under the total equitable indemnity theory. (Cf. *Torres* v. *Union Pacific R.R. Co.* (1984) 157 Cal.App.3d 499, 510 [203 Cal.Rptr. 825].)

■ Appellants next contend that a claim for *implied contractual* indemnity survives a good faith settlement claim. In *E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497 [146 Cal.Rptr. 614, 579 P.2d 505], decided shortly after *American Motorcycle,* our high court discussed the various sources of indemnity and stated: "The obligation of indemnity, which we have defined as 'the obligation resting on one party to make good a loss or damage another has incurred' [citation] may arise under the law of this state from either of two general sources. First, it may arise by virtue of express contractual language . . . . Second, it may find its source in equitable considerations brought into play either by *contractual language not specifically dealing with indemnification* or by the equities of the particular case." (*Id.* at pp. 506-507; italics added.)

Relying on *E. L. White, Inc., supra,* 21 Cal.3d 497 , the court in *Kramer* v. *Cedu Foundation, Inc.* (1979) 93 Cal.App.3d 1, 12 [155 Cal.Rptr. 552], held: "Implied contractual indemnity is a form of equitable indemnity; . . ." subject to the guidelines of *American Motorcycle.* And in *IRM Corp.* v. *Carlson, supra,* 179 Cal.App.3d 94, 110 , Division Four of this court reached a similar conclusion, opining that "the doctrine of implied contractual indemnity went the same route as did implied equitable indemnity [under *American Motorcycle*]." Based on such authority, respondent contends that implied contractual indemnity is merely a form of equitable indemnity, and that appellants' indemnity claim is accordingly barred by the good faith settlement.

Appellants, however, cite *Bear Creek Planning Com.* v. *Title Ins. & Trust Co.* (1985) 164 Cal.App.3d 1227, 1239 [211 Cal.Rptr. 172] for the proposition that implied contractual indemnity survives a good faith settlement claim. In *Bear Creek,* a homeowner's association was sued for enforcing a covenant which had not been recorded by the title company. The court determined that the title insurance company breached an implied contractual duty to the association to properly record the covenants and held that the association's settlement with the plaintiff homeowner did not preclude the association from seeking indemnity from the title insurance company. Since, however, holding that implied contractual indemnity is not barred by a good faith settlement is clearly inconsistent with our high court's oft-repeated pronouncement that implied contractual indemnity is merely a form of equitable indemnity (*E. L. White, Inc.* v. *City of Huntington Beach, supra,* 21 Cal.3d 497, 506; *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d

622, 628 [119 Cal.Rptr. 449, 532 P.2d 97]), we do not find *Bear Creek* persuasive.

In summary, appellants' claim for total equitable indemnity fails because their liability to McPhail's cannot be wholly attributed to respondent. (*Torres v. Union Pacific R.R. Co., supra,* 157 Cal.App.3d 499, 510.) And because the great weight of authority holds that implied contractual indemnity is a form of equitable indemnity subject to *American Motorcycle,* appellants cannot predicate error on the contrary view. (*Kramer* v. *Cedu Foundation, Inc., supra,* 93 Cal.App.3d 1, 12-13; *IRM Corp.* v. *Carlson, supra,* 179 Cal.App.3d 94, 110.)

The judgment is affirmed.

Elkington, Acting P. J., and Holmdahl, J., concurred.